UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KIRK LYNCH, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 1:17-cv-00798-JMS-DML |
| CORIZON, INC., et al., | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Kirk Lynch, an inmate at the New Castle Correctional Facility ("New Castle"), brings this action pursuant to 42 U.S.C. § 1983 alleging that a number of different defendants were deliberately indifferent to his serious medical needs.[1] The defendants move for summary judgment on his claims arguing that he has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). For the following reasons, the motion for summary judgment, dkt. [29], is **granted**.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable

---

[1] Specifically, He asserts that he suffers from musculoskeletal pain as a result of a previous injury; anxiety and depression; headaches, dizziness, and blurred vision; gout; cardiovascular problems, including a rapid pulse, problems with a heart valve, high blood pressure, and high cholesterol; asthma; and gastrointestinal issues including a hernia and pain from pinched, impacted intestines.

inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

**Statement of Facts**

A. *Grievance Program*

As required under Indiana Department of Correction ("IDOC") policy, there is an offender grievance program in place at New Castle. Offenders are instructed on the grievance process at the intake facility—Reception Diagnostic Center, and again when they arrive at the New Castle Correctional Facility.

Under the Offender Grievance Process, offenders can grieve actions of individual staff, including claims that facility staff were deliberately indifferent or that staff retaliated against them, and the facility can provide appropriate relief for substantiated grievances. This includes grievances regarding an offender's medical care. The grievance process begins with the informal resolution process. Within five business days of the date of the incident at issue, the offender shall contact his Casework Manager, his Caseworker, or other Unit Team staff member to request State Form 52897 Offender Complaint – Informal Process Level. The offender is then

2

required to attempt to resolve his complaint informally by contacting an appropriate staff member within five business days of receiving the Offender Complaint form.

If the informal complaint process does not resolve the Offender's issue within 10 business days, he may then proceed to the Level I formal grievance process. The formal grievance process begins when an offender submits a completed State Form 45471 "Offender Grievance" to the Grievance Specialist. The Offender Grievance must be submitted within five business days of the date a staff member informs the offender there will be no informal resolution to the grievance, within five business days of the date the offender refuses the informal resolution offered by staff, or the 10th business day after the offender first seeks an informal resolution from staff.

The grievance submitted by the offender is screened by the Grievance Specialist to determine whether the submitted grievance meets the requirements for a formal grievance as set forth in the IDOC grievance policy. If it is determined that the grievance does not meet the requirements of the policy, the grievance is returned to the offender along with State Form 45475 "Return of Grievance." The Return of Grievance form shall indicate the reason for the return. If an adequate grievance form is received, the Grievance Specialist enters the grievance, the computer program OGRE assigns the grievance a case number, and the Grievance Specialist provides a receipt for the grievance to the offender. If the offender does not receive either a Return of Grievance Form or a grievance receipt within seven business days after submitting a grievance, the offender must immediately notify the Grievance Specialist of the missing grievance, retaining a copy of the notice, so that the Grievance Specialist can investigate the matter and respond to the offender. The Grievance Specialist may accept a late grievance, or one

that does not conform to the requirements set forth in the IDOC grievance policy, if an offender demonstrates good cause. If the grievance is not resolved in a manner that satisfies the offender, or if he did not receive a response to the grievance within twenty business days of submission, the offender may file an appeal to the Department Offender Grievance Manager at IDOC's Central Office. The offender grievance appeal form is submitted by the offender to the facility Grievance Specialist, where it is entered into the computer system and forwarded electronically to the Department Offender Grievance Manager. The Grievance Specialist also provides a receipt for the appeal to the offender.

In short, exhaustion of the grievance process requires an offender to attempt an informal resolution, to file a formal grievance, and to pursue an appeal to the Department Offender Grievance Manager at IDOC's Central Office.

B. *Lynch's Grievances*

Jennifer Smith is the Grievance Specialist at New Castle. Ms. Smith has access to the files in which offender grievances are maintained ("offender packets"); the computer records containing the offender grievances filed ("OGRE"); and IDOC's Offender Information System ("OIS"), which is a computer record of information relating to offenders who are incarcerated in IDOC.

On November 3, 2016, Mr. Lynch submitted an Offender Grievance State Form 45471 regarding documents from home that were allegedly confiscated and asking for their return. Ms. Smith completed a Return of Grievance State Form 45475 on the same day instructing Mr. Lynch to attempt to resolve this grievance informally, along with additional instructions for the form to be completed and returned. Mr. Lynch did not correct or return the form.

4

On December 13, 2016, Mr. Lynch submitted an Offender Grievance State Form 45471 regarding gout medication being discontinued, it being ineffective, and his serious medical needs. Ms. Smith completed a Return of Grievance State Form 45475 on the same day instructing Mr. Lynch to attempt to resolve this grievance informally, along with additional instructions for the correct form to be completed and returned. Mr. Lynch did not correct or return the form.

On March 8, 2017, Mr. Lynch submitted an Offender Complaint—Informal Process Level State Form 52897 regarding medications and paper records which were allegedly missing. On March 17, 2017, Health Services Administrator ("HSA") Christopher Hufford responded to the informal complaint that the medication issue was resolved and all orders are current and active. Mr. Lynch disagreed with the resolution.

On March 20, 2017, Mr. Lynch submitted an Offender Grievance State Form 45471 regarding his medications being removed and missing for no apparent reason and their reappearance. Ms. Smith completed a Return of Grievance State Form 45475 on the same day instructing Mr. Lynch to complete the correct form and advising him that compensation could not be provided through the grievance process. Mr. Lynch did not submit or return the correct form.

On April 8, 2017, Mr. Lynch submitted an Offender Complaint—Informal Process Level State Form 52897 regarding his medications, the times they were administered, why some were prescribed, and hernia surgery. On April 11, 2017, HSA Christopher Hufford responded to the informal complaint that Mr. Lynch received the correct medications at the prescribed times based on medical necessity and that the issue was resolved. Mr. Lynch disagreed with the resolution.

On April 17, 2017, Mr. Lynch submitted an Offender Grievance State Form 45471 regarding his medical treatments allegedly being withheld, life threatening maladies, pain, and that he was in imminent danger. Ms. Smith completed a Return of Grievance State Form 45475 on the same day asking Mr. Lynch to clarify which medications and treatments were allegedly withheld and what imminent danger and life threatening injuries he had. Mr. Lynch did not submit any of the requested information to clarify his grievance or return the form.

**Discussion**

The defendants argue that Mr. Lynch failed to exhaust his administrative remedies with respect to his claims in this case. The PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006).

The PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: Thus, an inmate must exhaust available remedies, but need not exhaust unavailable ones. *Ross v.*

*Blake*, 136 S. Ct. 1850, 1858 (2016). In other words, prison staff who have the responsibility of providing prisoners with a meaningful opportunity to raise grievances cannot refuse to facilitate that process and then later argue that the prisoner did not comply with procedures or file in a timely manner. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The defendants argue that Lynch failed to exhaust his administrative remedies because he never completed the Offender Grievance Procedure with regard to any of his claims in this case. On November 3, 2016, he submitted Offender Grievance State Form 45471 regarding confiscated medical records, but he had not attempted to resolve the grievance informally. On December 13, 2016, he submitted Offender Grievance State Form 45471 regarding gout medication, but he had not attempted to resolve that matter informally. On March 8, 2016, he submitted an Offender Complaint—Informal Grievance Process Level State Form 52897 regarding missing medications and medical records. Although he disagreed with the response he received to the informal complaint, he did not file a formal grievance. On March 20, 2017, he submitted Offender Grievance State Form 45471 regarding his medication, but he had not attempted to resolve the matter informally. On April 8, 2016, he submitted Offender Complaint—Informal Grievance Process Level State Form 52897 regarding his medications and hernia surgery. He disagreed with the response he received to the informal complaint, but he never filed a formal grievance. On April 17, 2016, he submitted Offender Grievance State Form 45471 claiming that medical treatment had been withheld, that he had life threatening maladies,

pain, and that he was in imminent danger without attempting to resolve these issues informally. Additionally, when asked to provide more information regarding the dangers to his life, he did not respond.

Lynch argues that administrative remedies were unavailable to him for a number of reasons, including:

> a.) he was prohibited from trying to request necessary appeal forms; b.) the Grievance Specialist Jennifer Smith refused, despite multiple requests by Plaintiff to log in and assign grievance numbers to formal grievance filings; c.) he was verbally threatened when he attempted even midlevel appeals; d.) he was on occasion deliberately provided the wrong appeal forms; e.) he was placed in the 'hole' without reason or justification as a pretext so that his cell could be subjected to a punitive search and +30 packages clearly marked legal mail could be and were destroyed and made unavailable to Plaintiff near the deadline for contesting Defendants Motion for Summary Judgment; f.) he was directly ordered by guards and medical staff not to file future grievances concerning medical issues at the correctional facility; g.) despite verbal requests to staff not to house him with a specific particularly violent offender, that offender was deliberately housed near Plaintiff and Plaintiff suffered a violent incident with this drunken inmate; h.) the institution utilizes a 'pod-rep (trustee)' system whereby specifically designated inmates are utilized to run interference and keep inmates from access to their counselors, case managers, and prison officials so that inmates desiring an appeal cannot physically come into contact and raise issues with prison officials and request appropriate appeals forms; and i.) Medical Defendants manipulated and withheld Plaintiff's access to needed medication in order to negatively affect Plaintiff's cognition, ability to concentrate and function during the remedy process.

Lynch has also submitted an affidavit elaborating on some of these arguments.

Many of Lynch's arguments are too general to dispute the defendants' specific evidence that he did not exhaust his administrative remedies. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial.). These include his assertion that Ms. Smith did not provide him with grievance file log numbers, which made it

8

impossible to track and complete the grievance process, that there are multiple additional grievances which have been "secreted" by Smith so that he could not complete the process, and that he was placed in the "hole" and his legal papers were confiscated. He does not state how not having access to grievance log numbers made it impossible to track and complete the process. In addition, his statement that additional grievances have been "secreted" does not dispute the fact that he did not file informal grievances and this is why he was not allowed to move to the formal step of the process. He does not identify what grievances he has filed or attempted to file that were not logged or that were hidden. And his argument that he was in the "hole" and his legal papers were confiscated does not support a conclusion that he was not given grievance forms or that he was not allowed to file them. Even if hs legal papers were taken away, his own testimony and recollection of his submission of grievances, or attempts to submit grievances, is all that is needed at this stage. Importantly, none of these arguments is an argument that Lynch did file, or attempt to file, an informal or formal grievance as required by the grievance policy and was prevented from doing so.

Similarly, Lynch also argues that the defendants denied him medication and gave him improper dosages of medication in order to render him incapable of thinking properly or filling out grievances. But he does not identify what medication was denied or explain how he was affected. Further, he did fill out grievance forms, but did not file informal grievance forms first. When this happened, Smith provided an explanation of the reason his grievance was rejected and instructed him on how the correct form should be completed and returned.

Lynch further argues that, in August of 2016, correctional officers threatened him and told him not to file any grievances. But he has not shown how these threats and orders prevented

9

him from completing the grievance process. The attempted grievances at issue in this case were all filed after these alleged threats took place. These threats, therefore, did not make the grievance process unavailable because he still attempted to use it after they were made.

Similarly, Lynch's argument that, despite his requests, he was housed with a violent inmate who attacked him on August, 5, 2017, does not show how his administrative remedies were made unavailable. Even if he meant that he was attacked in August of 2016, he has demonstrated no connection between the alleged attack and his ability or inability to file grievances.

He also asserts that another inmate is "running interference" and prevented him from complying with the grievance process. He states that this inmate "told [him] on multiple occasions that he knew about [this] lawsuit and that [Lynch] was not to be allowed access to staff and not to be given any appeal forms whatsoever." In other words, Lynch states that this inmate has blocked his ability to access forms after this lawsuit was filed. These actions therefore have no bearing on whether Lynch exhausted his available administrative remedies before this case was filed. *See Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004) ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed. . . . And these rules routinely are enforced . . . by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending . . . . To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.") (internal citations omitted).

Finally, Lynch also contends in his response that "he was prohibited from trying to request necessary appeal forms" and "he was on occasion deliberately provided the wrong appeal forms." But these statements are not included in Lynch's affidavit and are not otherwise sworn to under oath. They therefore will not be considered in response to the motion for summary judgment. *See Gilty v. Village of Oak Park,* 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) (explaining that statements that are "neither notarized nor made under penalty of perjury [do] not comply with Rule 56(e) . . . . As such, we can simply ignore them.").

In short, the defendants have shown that Lynch did not exhaust his administrative remedies with respect to his claims before filing this lawsuit. Lynch argues that, for a number of reasons, administrative remedies were not available to him. But Lynch has failed to present evidence that would create an issue of fact regarding whether administrative remedies were available to him.[2] The defendants are therefore entitled to summary judgment and Lynch's complaint must be dismissed without prejudice. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

**Conclusion**

---

[2] The Court notes that the defendants argue in their reply in support of their motion for summary judgment that Lynch's arguments are "not convincing" and "not credible." They go on to urge the Court to find that Lynch "fabricated" his testimony like the Magistrate Judge found in *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). While the Court has found in this case that Lynch has failed to create a dispute of fact, it appears necessary to remind the defendants that determinations of whether testimony is "convincing" or "credible" are not made at the summary judgment stage. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."). The defendants' reference to *Pavey* is misplaced. In that case, the Magistrate Judge made a credibility determination *at an evidentiary hearing* that was held for the purpose of resolving disputed issues of fact, not upon a review of the briefs submitted by the parties at summary judgment. *Id.* at 901. This hearing is what is required when disputes of fact exist, as was established in the case which directly preceded the hearing discussed. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [29], is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/21/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

KIRK LYNCH
220939
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Britney Jade McMahan
BLEEKE DILLON CRANDALL, PC
britney@bleekedilloncrandall.com